IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| CARL WALTON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. |
| v. : | No. 7:10-cv-87 |
| : | |
| CIVES CORPORATION, d/b/a CIVES : | |
| STEEL COMPANY, : | |
| : | |
| Defendant. : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 26). For the reasons stated below, the Motion is granted.

I. **Background**

Cives Corporation ("Cives") is in the business of structural steel and plate fabrication. (Defendant's Statement of Material Facts ("DSMF") ¶ 1.[1]) Located in Thomasville, Georgia, Cives employs approximately eighty-nine workers as material handlers, machine operators, layout fitters, welders, painters, shippers, and receivers. (DSMF ¶ 2.) Plaintiff Carl Walton ("Plaintiff") was hired by Cives as a welder in 1999. (DSMF ¶ 7.) Plaintiff was originally employed as a third-class welder, but during his tenure at Cives, he was promoted through the ranks to first-class, the highest class of welder. (DSMF ¶ 8.) Promotions only occur

---

[1] All citations to the Defendant's Statement of Material Facts refer to facts that have been admitted by the Plaintiff.

when there is an opening in a higher class. (Hicks 32.) Cives employees work in three shifts. (DSMF ¶ 3.) Plaintiff has worked the weekend shift, Friday through Sunday, 5 a.m. to 6 p.m., throughout his employment, declining offers to change his shift. (DSMF ¶ 8; Doc. 38, p. 4.)

Employees report directly to supervisors on each shift. Supervisors are responsible for overseeing the work of the employees, ensuring that they are on task, that the quality of their work is up to standards, and that any issues that may arise are dealt with promptly. (DSMF ¶ 10, 11.) The supervisors report to the Shop Superintendent, who in turn reports to the General Manager. (DSMF ¶ 4.) At the time relevant to this lawsuit, Plaintiff's direct supervisor was Jack Bachman. (DSMF ¶ 9.) The Shop Superintendent was Steve Hicks and the General Manager was Craig Alderman. (DSMF ¶ 5.)

Cives allows employees who are interested in a promotion or transfer to submit a promotion request form expressing interest in a new position. (DSMF ¶14; Hicks p. 70.) Submitting this form is not a prerequisite for a promotion; instead, it is a way to ensure that management is aware of an employee's interest in being promoted. An employee who does not submit a memo can still be considered by the Shop Superintendent and the General Manager if the employee has the potential to be a good candidate for a promotion. (DSMF ¶ 15.) The Cives Employee Handbook lists the following factors as considerations in promotion and transfer decisions: skill, ability to perform the work, attendance, previous experience based on company records, prior work record with the

company, safety record, and other factors pertinent to satisfactory performance. (DSMF ¶ 16.) In addition to these factors, Sue Wilson, the head of Human Resources, testified that other factors considered in promotion decisions included "ability, work ethic … leadership skills, willingness to go a little bit above and beyond, if [the candidate] was respected by their peers." (Wilson 25.) The seniority of a candidate does not play a major role in promotion decisions at Cives. Recent candidates who have been promoted to supervisory positions have had a range of experience that varies from less than a year to thirteen years. (DSMF ¶¶ 19-22.)

In late 2007, two supervisor positions came open. (DSMF ¶ 24.) According to Cives, four candidates were considered for the two open positions:[2] Tommy Barner, Ken Bass, Tim Swymer, and Plaintiff.[3] (DSMF ¶ 25.) Plaintiff and Barner had previously submitted a memo to management asking to be considered for

---

[2] Plaintiff denies that these four candidates were actually considered by Cives. Plaintiff alleges that the promotion decision was made without any deliberation, and all evidence of any conversation about who to promote has been fabricated by Cives in an attempt to disguise discrimination. There is a memo from November 12, 2007 that Hicks wrote regarding the promotions, but Plaintiff contends that this memo was contrived by Cives after Plaintiff filed his complaint with the EEOC. Aside from Plaintiff's allegations, there is no evidence on the record that the memo is inauthentic, or that Cives invented any evidence in an attempt to mislead the Court. Therefore, the Court dismisses any allegations of fabrication as being without merit.

[3] In addition to these four men, Hicks, the General Manager, also asked John Choice and Richard Marchant if they would like to be considered for a promotion. Both declined. (DSMF ¶27.)

promotions.[4] (Hicks 79.) Tim Swymer ("Swymer") verbally indicated that he wanted to be considered for any available supervisor positions. (DSMF ¶ 29.)

Hicks evaluated the candidates based on personal knowledge and feedback from the employees' supervisors. (Hicks 82.) Hicks recalled that Bass' supervisor called him a "good hard worker" who was interested in the company and needed little supervision. (Hicks 82.) Likewise Swymer's supervisor recommended him for a promotion. (Hicks 83.) However, neither Barner's supervisor nor Plaintiff's supervisor gave a positive recommendation. (Hicks 84.)

In November 2007, Hicks drafted a memo with his recommendation that Ken Bass ("Bass") and Swymer, both white males, be promoted to the supervisor positions. (Hicks 75, 78.) Both men began training for the supervisor position shortly thereafter. Plaintiff continued his job as a first-class fitter, and later filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming he was denied the promotion because of his race.

II. **Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when

---

[4] Hicks was unable to recall whether Bass submitted a promotion request form.

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

III. **Analysis**

Plaintiff has brought his claim for discrimination under Title VII, alleging that he has been discriminated against on the basis of race. *See* 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff asserts that the decision to promote Swymer to a supervisory position over Plaintiff was motivated by racial discrimination.

Discrimination claims based upon the failure to promote can be established through either direct or circumstantial evidence. *See* Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). A claim based on direct evidence requires "the most blatant remarks, whose intent could mean nothing other than to discriminate." Id. (citing Rojas v. Florida, 28 F.3d 1339, 1342 n. 2 (11th Cir. 2002)). Any evidence that merely suggests discrimination, but does not conclusively establish it, is considered circumstantial evidence. Id. In this case, Plaintiff argues that circumstantial evidence establishes his claim of racial discrimination in the failure to promote context.

A. **Discrimination Claims in the Failure to Promote Context**

A three-step analysis is employed to evaluate failure to promote discrimination claims based on circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973). The plaintiff must first demonstrate the four elements necessary to establish a prima facie case: "(1) he is a member of a protected class; (2) he was qualified and

6

applied for the promotion; (3) he was not promoted; and (4) someone outside his protected class was promoted." Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998).[5]

Next, if the plaintiff is able to establish these four elements, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. The employer is not charged with persuading the court that it was actually motivated by the stated reasons. Id. (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981)). Instead, if the employer "articulat[es] one or more reasons, then the presumption of discrimination is rebutted." Id. (citing Wilson, 376 F.3d at 1087).

Finally, if the defendant offers a non-discriminatory reason justifying the employment action, the burden of production shifts to the plaintiff to produce sufficient evidence to permit a factfinder to determine that the reasons offered by

---

[5] There is an intracircuit split in the Eleventh Circuit as to whether the fourth element of the prima facie case for a failure to promote claim requires the plaintiff to demonstrate that the employee who received the promotion was equally or less qualified than the plaintiff.

The requirement of showing that the employee was equally or less qualified was first recognized in Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 n.7 (11th Cir. 1983). Prior to Perryman, Eleventh Circuit courts relied on Crawford v. Western Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980), which only required that plaintiffs demonstrate that someone outside the protected class was promoted. The Eleventh Circuit exhaustively discussed the split in Walker v. Mortham and adopted the Crawford rule under the "earliest case" principle, noting that "we have found no explanation for why the Perryman court decided to alter the prima facie case." 158 F.3d 1177, 1186, 1187 (11th Cir. 1998).

Despite the Walker Court's instruction, courts within the Eleventh Circuit have continued to apply both Perryman and Crawford. Nevertheless, this Court finds, based on Walker's reasoning, that Crawford is the appropriate precedent, and the standard articulated in that case controls here.

the employer are mere pretext. Chapman v. A.I. Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). The plaintiff can do so by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). If the plaintiff does not offer sufficient evidence to create a genuine issue of material fact about whether the employer's stated reasons are pretextual, then the employer is entitled to summary judgment on the plaintiff's claim. Chapman, 229 F.3d at 1025.

In this case, Plaintiff can establish a prima facie case for discrimination for failure to promote; however, Plaintiff fails to show that the reasons stated by Cives for the promotion are pretext. The three steps of the failure to promote framework as articulated in McDonnell Douglas Corp., 411 U.S. at 802-04, are analyzed below.

    1.    **Plaintiff's prima facie case**

The plaintiff in a failure to promote action bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. The first element of the prima facie case is that a plaintiff must show that she is a member of a protected class. Walker, 158 F.3d at 1186. In this case, Plaintiff is African-American, which is considered a protected class. Thus, the first element of the prima facie case is satisfied.

Next, a plaintiff must demonstrate that he applied and was qualified for the promotion. Walker, 158 F.3d at 1186. To demonstrate that he applied, a plaintiff must show that he actually submitted an application in compliance with formal application procedures. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). If informal procedures are used for the application process, "a plaintiff must only demonstrate that the employer had some reason to know of his interest in the position." Id. To show that he was qualified, a plaintiff at the prima facie stage only needs to show that he met the employer's objective criteria. Id. at 769.

In this case, Plaintiff wrote a memo to management expressing his interest in a promotion. This memo demonstrates that Plaintiff applied for the promotion. However, to establish the prima facie case, Plaintiff must also show that he was qualified for the promotion. Cives argues that Plaintiff was not qualified for the promotion because "he had to be 'pushed' to stay on task, frequently left his work station, and pulled other employees off-task with his chatting." (Doc. 26-2, p. 13.) However, Defendant admits that Plaintiff was one of four candidates being considered for the promotion. (DSMF ¶ 25.) Defendant's consideration of Plaintiff as a candidate for a promotion shows that Plaintiff was objectively qualified for the position. Thus, Plaintiff satisfies the second element of the prima facie case.

Third, Plaintiff must show that he was not promoted. Walker, 158 F.3d at 1186. In this case, Plaintiff is still employed at Cives as a first-class fitter, which

means that he was not promoted, and therefore, the third element of the prima facie case is met.

Finally, a plaintiff bringing a failure to promote claim must establish that someone else outside the protected class was promoted. Walker, 158 F.3d at 1186. Here, Swymer, a white male, received a promotion. Thus, the fourth element is satisfied.

Therefore, all elements of the prima facie case have been met.

2. **Cives' legitimate reasons for its employment decision**

If a plaintiff bringing a failure to promote claim can establish a prima facie case for discrimination, then the burden of production shifts to the defendant to articulate a legitimate reason for its employment decision. McDonnell Douglas Corp., 411 U.S. at 802-03. Here, Cives gives three reasons for its decision to promote Swymer ahead of Plaintiff: 1) Swymer's leadership skills, work ethic, and attitude, 2) Swymer's previous supervisory experience in the steel fabrication industry, and 3) Swymer's workplace behavior.

The Court finds that these reasons are sufficient to discharge BASF's burden of proof at this stage, and Plaintiff's claim of discrimination is rebutted.

3. **Plaintiff's arguments that Cives' reasons are pretext**

If the defendant in a failure to promote case articulates legitimate reasons for its allegedly discriminatory action, the burden shifts back to the plaintiff to demonstrate that the reasons stated by the defendant are pretext. McDonnell Douglas Corp., 411 U.S. at 804. In this case, Plaitiff has established a prima

10

facie case of discriminatory failure to promote, but summary judgment in favor of Cives is still appropriate because Plaintiff has failed to raise a genuine issue of material fact as to whether Cives' reasons for not promoting Plaintiff are pretext.

In the failure to promote context, pretext can be established by revealing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its action." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007). However, a plaintiff cannot prove pretext "by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Id. (citing Alexander v. Fulton Co., 207 F.3d 1303, 1339 (11th Cir. 2000)). A plaintiff must go further than merely claiming that the defendant's reasons for promoting someone else were wrong; instead, the plaintiff must show the defendant's actions were actually motivated by discriminatory intent. Id.

Comparing qualifications will be sufficient to establish pretext only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." Ash v. Tyson Foods, Inc., 546 U.S. 454, 456, 126 S.Ct. 1195 (2006) (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004) (overruled on other grounds)). "[A]sserting baldly that she was better qualified than the person who received the position at issue" will not be adequate. Wilson, 376 F.3d at 1090. Essentially, comparing qualifications will only be effective to show pretext when the disparity between applicants is so great that no reasonable person would have chosen the candidate that was selected over the

11

plaintiff. Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).

In this case, Cives has articulated several non-discriminatory reasons to support its decision to promote Swymer to supervisor instead of Plaintiff. The reasons stated by Cives include: 1) Swymer's leadership skills, work ethic, and attitude, 2) Swymer's previous supervisory experience in the steel fabrication industry, and 3) Swymer's workplace behavior. These reasons are discussed below.

### a. **Swymer's leadership skills, work ethic, and attitude**

Cives first argues that Swymer's leadership skills, work ethic, and attitude qualified him for the promotion over Plaintiff. Plaintiff responds by contending that Cives should be precluded from making this argument because it is too subjective to merit the Court's consideration. Plaintiff argues that while subjective reasons can sometimes be considered by the court, these reasons must have a factual basis and provide enough specificity to allow for objective evaluation. Plaintiff argues that leadership capacity, work ethic, and attitude are not objective standards and, further, Cives has not developed the underlying factual basis necessary to establish that these subjective criteria are fit for judicial evaluation.

Eleventh Circuit jurisprudence recognizes that subjective criteria like personal qualities do factor heavily into employment decisions. *See* Chapman, 229 F.3d at 1034 ("traits such as common sense, good judgment, originiality, ambition, loyalty, and tact often must be assessed primarily in a subjective

fashion, yet they are essential to an individual's success in a supervisory or professional position") (internal citations omitted). However, the Eleventh Circuit has carefully noted that despite the recognized role that subjective traits play in the employment process, a defendant's explanation of its subjective reasons must be clear and specific. Id. "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Id. Therefore, the court is limited to considering only those subjective reasons that are well-supported by fact.

In this case, leadership skill, work ethic, and attitude may be subjective measures, but Cives supports these reasons with a sufficient factual basis. Cives does not discuss these qualities generally or abstractly, but instead gives specific examples to explain why Plaintiff lagged behind Swymer in these areas. Tim Donaldson, a Cives supervisor, noted that Plaintiff was not prepared to take on the leadership role of a supervisor. (Donaldson 50.) Donaldson testified that although Plaintiff was a good welder and was never written up or formally disciplined, Swymer was a better candidate. (Donaldson 30.) When asked why Plaintiff would not be a good supervisor, Donaldson responded "[m]aybe because of the talking," referring to Plaintiff's tendency to leave his work station and talk to the other workers. (Donaldson 50.) Further, Alderman stated that "[Plaintiff] was a good welder, but he was a bit of a wanderer. He was not the most diligent worker so was not perceived as having those attributes that would

13

make him stand out as a supervisor candidate." (Alderman 42-43.) Hicks testified that Plaintiff's former supervisor, Jack Bachman, told him that "he ha[d] to push [Plaintiff] to work, that [Plaintiff] does not stay at his work station, and that [Plaintiff] does a lot of gossiping." (Hicks 82.) These specific facts demonstrate that Cives had a sufficient basis for using subjective factors as legitimate criteria for making the decision to promote Swymer.

After reviewing the record, the Court concludes that there is sufficient evidence of Swymer's leadship skill, work ethic, and attitude, as well as Plaintiff's lack thereof, to support Cives' promotion decision. Based on the evidence, the decision to promote Swymer was reasonable and does not indicate any type of veiled discriminatory intent.

b. **Swymer's previous supervisory experience**

Cives further states that another reason for promoting Swymer ahead of Plaintiff was Swymer's experience in the steel fabrication industry. At the beginning of his career, Swymer was an ironworker who was a member of the local steelworkers union, working for a company named Raytheon. (Swymer 11-12.) In 1999, he formed Swymer Steel Erectors with his brother, and their business operated from 2000-2004. (Swymer 14-16.) Swymer's resume reflects that he went to work at Stewart County Road Shop as the shop foreman in 2004. (Swymer 18.)

Hicks, who initially interviewed Swymer, was immediately impressed with Swymer's past experience. After conducting Swymer's interview, Hicks indicated

14

in his notes that Swymer would be a good candidate for a supervisor role one day. (Hicks 52, 79.) He stated that Swymer impressed him because "he had his own company and he had other men working for him and he was experienced in supervising other employees." (Hicks 65.) Further, Hicks recalled that he thought Swymer would be a good supervisor because "he was familiar with structural steel, the proceses, how to do it, these types of things." (Hicks 61.) Alderman, the General Manager, said that Swymer was "a stand-out individual as far as he knew the business when we hired him. So, he worked his way quickly through the ranks. He showed a willingness to want to help in various departments, wanted to learn different departments … The men respected him. He's a very hard worker." (Alderman 14.)

In contrast, Plaintiff did not have any previous supervisory work in the steel industry. Plaintiff did supervise seven soldiers in Fort Knox, Kentucky during his ten-year stint in the Army. (Walton 12.) However, Plaintiff's experience was not in the steel industry, like Swymer's.

In his response to Cives' Motion for Summary Judgment, Plaintiff draws attention to the fact that Swymer was incarcerated from 2004-2006,[6] and that Stewart County Road Shop, listed on Swymer's resume, was actually a prison shop where inmates worked. However, Cives asserts that no one at the company was aware of Plaintiff's prior incarceration, and that no questions were asked

---

[6] Swymer was released from prison just ten days before he began working at Cives. (Swymer 19.)

about Stewart County Road Shop in the interview. (Hicks 28-29, 51; Wilson 17.) Plaintiff claims that the fact that no one at Cives knew about the incarceration demonstrates one of two things: "either Hicks is lying and he did know that Swymer was an ex-con … or Swymer's previous employment was not really relevant to the decision to hire him and similarly promote him." (Doc. 35, p. 14.) The Court disagrees with Plaintiff's reasoning on both counts.

First, there is no evidence in the record to support Plaintiff's contention that Cives had reason to know that Swymer had previously been incarcerated. Wilson, the Human Resources manager, testified that it was not company policy to perform background checks. (Wilson 20.) Further, Hicks and Swymer both confirm that Swymer's prison time never came up during his interview. (Hicks 28-29, Swymer 66.) Detailed questions about Stewart County Road Shop were likewise not a point of discussion during Swymer's interview. (Wilson 17, Hicks 51, Swymer 64-65.) Further, Donaldson stated that he did not know about Swymer's prison sentence until after Swymer was promoted to supervisor, and then he found out only because "people in the shop [were] talking." (Donaldson 13.) Based on the record, there is no evidence that anyone in charge of hiring and promoting knew about Swymer's incarceration.

Second, the record does not contain any evidence that supports Plaintiff's claim that Swymer's past experience was "not really relevant." To the contrary, Swymer's experience made him stand out to those people who interviewed him. (Hicks 52, 65; Alderman 14, 37-38.) It is illogical to argue that simply because

Cives' interviewers did not ask about Stewart County Road Shop, it should be deemed unimportant. Apart from speculation and conjecture, Plaintiff has not presented any evidence to dispute the claim that many people at Cives were impressed with Swymer's past experience in the steel industry.

Therefore, Cives' claim that Swymer was more qualified because of his prior experience in the steel industry is valid reason for an employment decision and does not reveal any pretext.

### c. **Swymer demonstrated better workplace behavior than Plaintiff**

Cives argues that Swymer had a better workplace record than Plaintiff. Swymer's attendance record was nearly perfect (Wilson 30), with Alderman commenting that "his attendance was impeccable" (Alderman 14). Swymer's safety record was also good. (Hicks 110.) Further, there is no evidence on the record that Swymer's supervisors ever mentioned any problems with his performance. On the other hand, the record reflects that Plaintiff's supervisors complained about him to Hicks (Hicks 101) and had reservations about him in a supervisory role (Donaldson 30, 50; Alderman 42-43; Bachman Aff., ¶¶ 7-8).

Taken with the statements from Plaintiff's supervisors about his difficulty staying at his work station and his inability to be serious about his work, the Court finds that there is sufficient factual basis to conclude that Cives' contention that Swymer had a better workplace record is well-founded and does not demonstrate pretext for discrimination.

IV.     **Conclusion**

"As a factfinder, the district court must ultimately 'decide which party's explanation of the employer's motivation it believes.'" <u>Moulds v. Wal-Mart Stores, Inc.</u>, 935 F.2d 252 (1991) (citing <u>Hill v. Seaboard Coast Line R. Co.</u>, 885 F.2d 804, 811 (11th Cir. 1989)).

In this case, testimony from Cives is consistent throughout the record and demonstrates that management is in agreement that Swymer was a better qualified candidate for myriad reasons, none of which are discriminatory. The Court therefore finds that Plaintiff has established a prima facie case for discrimination, but is unable to demonstrate that the reasons stated by Cives for the hiring decision were pretext. Therefore, summary judgment in favor of Cives is appropriate.

**SO ORDERED, this 22nd day of December, 2011.**

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

ebr